## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **DAVID PALACIOS, as Independent Administrator of the Estate of DAVID MALITO, Deceased,** | |
| **Plaintiff,** | |
| ***v.*** | |
| **CITY OF JOLIET, a Municipal Corporation; JOLIET POLICE OFFICER CHRISTOPHER MEZA (Star No. 138), in his individual capacity; JOLIET POLICE OFFICER OLIWIA NOWAK (Star No. 216), in her individual capacity; and JOLIET POLICE OFFICER ANDREA ESPINOSA (Star No. 254), in her individual capacity,** | **No. 25-cv-15626** <br><br> ***Jury Trial Demanded*** |
| **Defendants.** | |

## COMPLAINT

NOW COMES Plaintiff, DAVID PALACIOS, as Independent Administrator of the Estate of DAVID MALITO, Deceased, by and through his attorneys, Barney Hammond LLP, and, complaining of Defendants, CITY OF JOLIET, a Municipal Corporation, JOLIET POLICE OFFICER CHRISTOPHER MEZA, in his individual capacity, JOLIET POLICE OFFICER OLIWIA NOWAK, in her individual capacity, and JOLIET POLICE OFFICER ANDREA ESPINOSA, in her individual capacity, (referred to herein collectively as "Defendants"), states as follows:

## INTRODUCTION

1.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of DAVID MALITO's rights as secured by the United States Constitution.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a), the Constitution of the United States, and this Court's supplemental jurisdiction powers pursuant to 28 U.S.C. § 1367.

3.     Venue is proper under 28 U.S.C. § 1391(b). Plaintiff and Defendants reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## PARTIES

4.     **Plaintiff.** DAVID PALACIOS, father of DAVID MALITO, is the duly appointed Independent Administrator of the Estate of DAVID MALITO, Deceased, having been so appointed by the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois (Case No. 2025PR727), to act in that capacity. At all times relevant to this Complaint, DAVID MALITO was a resident of the City of Joliet, County of Will, State of Illinois. He is now deceased. At all times relevant to this Complaint, Plaintiff, DAVID PALACIOS, was a resident of the City of Joliet, County of Will, and State of Illinois.

5.     **Defendant City of Joliet**. City of Joliet is a municipal corporation with

2

its principal place of business located in Joliet, Will County, Illinois.

6. **Defendant Christopher Meza**. Defendant, JOLIET POLICE OFFICER CHRISTOPHER MEZA (hereinafter referred to as "OFFICER MEZA" or "DEFENDANT OFFICER MEZA") is, and was at all times complained of herein, employed by Defendant, CITY OF JOLIET, as a police officer in the JOLIET POLICE DEPARTMENT. At all times material to this Complaint, DEFENDANT OFFICER MEZA was acting within the scope of his employment and under color of state law, ordinance, and/or regulation, statutes, custom, and usage of Defendant, CITY OF JOLIET, and the JOLIET POLICE DEPARTMENT. Upon information and belief, at all times relevant to this Complaint, OFFICER MEZA was, and still is, a resident of the County of Will, and State of Illinois.

7. **Defendant Oliwia Nowak**. Defendant, JOLIET POLICE OFFICER OLIWIA NOWAK (hereinafter referred to as "OFFICER NOWAK" or "DEFENDANT OFFICER NOWAK") is, and was at all times complained of herein, employed by Defendant, CITY OF JOLIET, as a police officer in the JOLIET POLICE DEPARTMENT. At all times material to this Complaint, DEFENDANT OFFICER NOWAK was acting within the scope of her employment and under color of state law, ordinance, and/or regulation, statutes, custom, and usage of Defendant, CITY OF JOLIET, and the JOLIET POLICE DEPARTMENT. Upon information and belief, at all times relevant to this Complaint, OFFICER NOWAK was, and still is, a resident of the County of Will, and State of Illinois.

8. **Defendant Andrea Espinosa**. Defendant, JOLIET POLICE

OFFICER ANDREA ESPINOSA (hereinafter referred to as "OFFICER ESPINOSA" or "DEFENDANT OFFICER ESPINOSA"), is, and was at all times complained of herein, employed by Defendant, CITY OF JOLIET, as a police officer in the JOLIET POLICE DEPARTMENT. At all times material to this Complaint, DEFENDANT OFFICER ESPINOSA was acting within the scope of her employment and under color of state law, ordinance, and/or regulation, statutes, custom, and usage of Defendant, CITY OF JOLIET and the JOLIET POLICE DEPARTMENT. Upon information and belief, at all times relevant to this Complaint, OFFICER ESPINOSA was, and still is, a resident of the County of Will, and State of Illinois.

## **BACKGROUND**

9.      On or about December 25, 2024, at or approximately at 4:25 a.m., DAVID MALITO made a telephone call to 9-1-1, requesting emergency services from inside a Shell Gas Station located at or near 401 S. Larkin Avenue, in the City of Joliet, County of Will, and State of Illinois.

10.     At the aforesaid time and place, DAVID MALITO was in distress and, in the aforesaid emergency telephone call, he reported to the Joliet Police Department dispatch that he was being threatened.

11.     DEFENDANT OFFICER MEZA and DEFENDANT OFFICER NOWAK responded to DAVID MALITO's 9-1-1 call and arrived at the aforesaid Shell Gas station at approximately 5:00 a.m. on or about December 25, 2024.

12.     At the aforesaid time and place, DEFENDANT OFFICER MEZA and DEFENDANT OFFICER NOWAK encountered DAVID MALITO inside the Shell

station convenience store.

13.     DAVID MALITO was visibly in a distressed state.

14.     Upon his first encounter with DEFENDANT OFFICER MEZA and DEFENDANT OFFICER NOWAK, DAVID MALITO was cooperative and compliant, including, but not limited to, putting his hands in the air and allowing OFFICER MEZA to search him.

15.     DAVID MALITO reported to DEFENDANT OFFICER MEZA and DEFENDANT OFFICER NOWAK that someone inside the gas station was trying to kill him.

16.     DAVID MALITO was sweating and his speech was pressured and rapid.

17.     DEFENDANT OFFICER NOWAK searched the store in an attempt to locate whomever DAVID MALITO was referring to, but she was unable to locate any such individual.

18.     Defendant Meza explained to DAVID MALITO that no one else was in the store except for the Shell station employee, but DAVID MALITO remained distressed.

19.     DAVID MALITO then began making statements which indicated that he was suffering from a mental health crisis and was in a state of psychosis, including displaying extreme fear of a bee and continuing to express his belief that someone was trying to kill him, despite evidence that these circumstances did not exist.

20.     At the aforesaid time and place, DEFENDANT OFFICER MEZA and DEFENDANT OFFICER NOWAK knew, or through the exercise of ordinary care,

should have known that DAVID MALITO was suffering from a mental health condition that was distorting his reality.

21.     DAVID MALITO attempted to flee the interior of the gas station convenience store due to his irrational belief that someone in the store was trying to kill him.

22.     DAVID MALITO, attempted to exit through the store's entrance/exit, however, the door was locked, so DAVID MALITO was unable to exit.

23.     DEFENDANT OFFICER MEZA directed the gas station employee to unlock the door, allowing DAVID MALITO to exit.

24.     DAVID MALITO then exited the gas station convenience store in a panicked state.

25.     At the aforesaid time and place, DEFENDANT OFFICER MEZA grabbed DAVID MALITO's arm as he was exiting the convenience store in an attempt to detain him.

26.     At this same time, DEFENDANT OFFICER ESPINOSA arrived on the aforesaid scene.

27.     As DEFENDANT OFFICER MEZA grabbed onto DAVID MALITO's arm, DAVID MALITO pleaded for help and continued his refrain that someone was trying to kill him.

28.     DEFENDANT OFFICER MEZA told DEFENDANT OFFICER ESPINOSA that DAVID MALITO was "on something" and requested that DEFENDANT OFFICER NOWAK and DEFENDANT OFFICER ESPINOSA help

place DAVID MALITO in handcuffs.

29.     At the aforesaid time and place, DEFENDANT OFFICER MEZA, DEFENDANT OFFICER ESPINOSA, and DEFENDANT OFFICER NOWAK (collectively referred to as "Defendant Officers") worked together to subdue and handcuff DAVID MALITO.

30.     As he was being placed in handcuffs by Defendant Officers, DAVID MALITO yelled for help, told the officers that he loved them, and pleaded with them to not kill him.

31.     At the aforesaid time and place, Defendant Officers were able to secure one handcuff on DAVID MALITO, but DAVID MALITO's fear of being harmed escalated as DEFENDANT OFFICERS attempted to secure the second handcuff.

32.     As a result of this fear, DAVID MALITO attempted to escape the handcuffing by pulling away.

33.     At the aforesaid time and place, DAVID MALITO then either fell to the ground or was pushed to the ground by DEFENDANT OFFICER MEZA, landing in the vicinity of a gas pump.

34.     At the aforesaid time and place, DEFENDANT OFFICERS, together, then immediately placed DAVID MALITO face down, into a prone position, and began attempting to place the second handcuff on his right wrist.

35.     Throughout the aforesaid attempt to handcuff him, DAVID MALITO continued to tell DEFENDANT OFFICERS that he loved them and asked them not to kill him.

36.     At the aforesaid time and place, once DAVID MALITO was placed in a prone position, DEFENDANT OFFICER NOWAK sat on his legs.

37.     Recognizing DAVID MALITO's distress, DEFENDANT OFFICER NOWAK instructed DAVID MALITO to "breathe for me" and "relax."

38.     At the aforesaid time and place, approximately one minute after placing DAVID MALITO into the prone position, DEFENDANT OFFICERS were able to complete the handcuffing of DAVID MALITO with DAVID MALITO's hands behind his back.

39.     Once the second handcuff was placed on DAVID MALITO, he stopped resisting entirely.

40.     Immediately after completing the handcuffing, the scene was secure and DAVID MALITO, who remained prone on the ground between a vehicle and a gas pump, did not pose a threat to himself or any other person, and was not resisting or obstructing Defendant Officers or any other person.

41.     At all times relevant to this Complaint, DAVID MALITO was unarmed.

42.     At the aforesaid time and place, as DAVID MALITO lay prone with his hands cuffed behind his back, DEFENDANT OFFICER NOWAK continued to sit on DAVID MALITO's legs.

43.     At the aforesaid time and place, and while still being detained in the prone position with his hands cuffed behind his back, DAVID MALITO began exhibiting clear signs of physical stress and exhaustion, yet he continued to lie on the ground not resisting DEFENDANT OFFICERS in any way, and he posed no threat

8

to any person.

44.     At the aforesaid time and place, despite that DAVID MALITO was not resisting and posed no threat, Defendant Meza forcefully placed his knee onto DAVID MALITO's upper back and, using his body weight, placed significant pressure onto DAVID MALITO as DAVID MALITO laid face down on the ground while handcuffed.

45.     At the aforesaid time and place, Defendant Meza's action of kneeling on DAVID MALITO's back significantly impeded DAVID MALITO's ability to inhale and exhale.

46.     At the aforesaid time and place, despite obvious and increasing signs that DAVID MALITO's breath was shallowing, and despite that DAVID MALITO was not resisting and posed no threat, DEFENDANT OFFICER MEZA continued kneeling on DAVID MALITO's back for approximately one minute and fifteen seconds.

47.     At the aforesaid time and place, DEFENDANT OFFICER NOWAK continued to sit on DAVID MALITO's legs as DEFENDANT OFFICER MEZA pressed his body weight onto DAVID MALITO's back with his knee.

48.     At the aforesaid time and place, during the period of time DEFENDANT OFFICER MEZA was kneeling on DAVID MALITO's back, DAVID MALITO's breath continued to shallow, he became unable to speak, and he went limp.

49.     At the aforesaid time and place, DEFENDANT OFFICER MEZA continued to kneel on DAVID MALITO's back despite clear signs that DAVID MALITO was in respiratory distress and losing consciousness.

50.     At the aforesaid time and place, and while DEFENDANT OFFICER MEZA and DEFENDANT OFFICER NOWAK were pressing their body weight upon DAVID MALITO's upper back and legs in the aforesaid restrained prone position, DAVID MALITO's unconscious body began taking in agonal breaths, a clear sign that DAVID MALITO was in cardiac arrest.

51.     At the aforesaid time and place, despite the aforesaid clear signs of respiratory distress, unconsciousness, and cardiac arrest, Defendant Meza continued kneeling upon DAVID MALITO's back.

52.     At the aforesaid time and place, throughout the entire time that DEFENDANT OFFICER MEZA was kneeling upon DAVID MALITO's upper back, DEFENDANT OFFICER NOWAK and DEFENDANT OFFICER ESPINOSA were present for and aware of DEFENDANT OFFICER MEZA's use of force, and took no actions to prevent, stop, or mitigate DEFENDANT OFFICER MEZA's actions.

53.     As a direct and proximate result of DEFENDANT OFFICER MEZA's actions, including, but not limited to, placing DAVID MALITO in a prone restraint position while handcuffed and kneeling on DAVID MALITO's back, DAVID MALITO went into acute respiratory distress and, ultimately, cardiac arrest.

54.     At the aforesaid time and place, while still kneeling upon DAVID MALITO's back, DEFENDANT OFFICER MEZA subsequently realized that DAVID MALITO's face had turned blue.

55.     At the aforesaid time and place, Defendant Officers then rolled DAVID MALITO onto his side and, rather than attempting Cardiopulmonary Resuscitation

(CPR) on DAVID MALITO, they administered Narcan (naloxone), a medication used to reverse opioid overdoses, despite any knowledge of the type of drug or drugs that DAVID MALITO had consumed, or whether he had consumed any drugs at all.

56.     At all times relevant to this Complaint, DAVID MALITO had not consumed any opioids.

57.     At the aforesaid time and place, DAVID MALITO's lifeless body remained handcuffed as DEFENDANT OFFICER MEZA began rubbing his chest.

58.     At the aforesaid time and place, paramedics from the Joliet Fire Department eventually arrived, requested that DAVID MALITO be uncuffed, placed him on his back, and began performing life saving measures, including CPR.

59.     At the aforesaid time and place, DAVID MALITO was subsequently loaded into a Joliet Fire Department ambulance transported to Saint Joseph Medical Center, located in Joliet, Will County, Illinois, where he was pronounced dead at 5:14 a.m. on December 25, 2024.

60.     The aforesaid unconstitutional actions of DEFENDANT OFFICER MEZA and DEFENDANT OFFICER NOWAK were the direct result of the City of Joliet's pervasive, systemic, and unconstitutional customs, policies, and practices.

61.     On December 12, 2024—thirteen days prior to DAVID MALITO's death—the Office of the Illinois Attorney General ("OAG") released a comprehensive investigative report entitled *Investigation of the Joliet Police Department* (hereinafter referred to as "OAG Report" or "Report").

62.     The OAG Report found the Joliet Police Department ("JPD") was

engaging in a "pattern or practice of using unreasonable force" and maintaining an "inadequate crisis intervention response system" that endangers citizens with behavioral health disabilities.

63.     The OAG report further found that JPD had a pattern and practice of failing to de-escalate situations "resulting in avoidable and unreasonable force." Specifically, the Report noted a departmental culture where officers "come in hot" and are trained on the erroneous premise that "using force early avoids the need for more force later."

64.     Consistent with this widespread custom, practice, and policy, DEFENDANT OFFICER MEZA and DEFENDANT OFFICER NOWAK failed to make reasonable efforts to de-escalate their encounter with DAVID MALITO, who was visibly suffering from a mental health crisis.

65.     DEFENDANT OFFICER MEZA and DEFENDANT OFFICER NOWAK also failed to avail themselves of other crisis intervention specialists who were employed by the City of Joliet and/or Joliet Police Department.

66.     Defendant Officers' failure to utilize crisis intervention techniques and officers employed by the City of Joliet was a result of, and consistent with, the Department's policy and practice of encouraging its police officers to use unnecessary force rather than pursue de-escalation.

67.     Defendant, City of Joliet, acted with deliberate indifference to the constitutional rights of DAVID MALITO by establishing policies, practices, and customs that resulted in the constitutional violations described in this Complaint,

and by failing to take immediate corrective action or alter its supervision of officers.

68.     Instead, acting pursuant to the JPD custom of "escalating early," DEFENDANT OFFICER MEZA grabbed DAVID MALITO and resorted to high-level physical force, including prone restraint and compression of DAVID MALITO's back with his knee, mirroring the unconstitutional patterns identified by the OAG.

69.     The aforementioned OAG report explicitly found that JPD's "crisis intervention practices are still not adequate to prevent unlawful uses of force against people with behavioral health disabilities."

70.     The OAG found that JPD officers engage in a pattern and practice of aggravating and escalating situations, resulting in force that could have been avoided.

71.     Further, the OAG specifically found that JPD supervisors "rarely identify, much less correct" unreasonable force, sending a message "from the top down that just about any level of force can be justified without consequence."

72.     At all times relevant to this Complaint, JPD's accountability systems were broken and routinely failed to hold Department members accountable for misconduct.

73.     At all times relevant to this Complaint, failures in JPD's accountability systems have directly contributed to patterns of unconstitutional and unlawful policing.

74.     This culture of impunity and ratification emboldened DEFENDANT OFFICER MEZA to use excessive force in plain view of witnesses and other officers,

13

secure in the knowledge that Defendant City of Joliet's custom is to ignore or justify such misconduct.

75.     The failure of DEFENDANT OFFICER NOWAK and DEFENDANT OFFICER ESPINOSA to intervene to stop DEFENDANT OFFICER MEZA's use of deadly force was a direct result of JPD's custom, noted in the OAG report, that "officers do not intervene to prevent excessive force."

76.     These aforesaid systemic failures by Defendant, CITY OF JOLIET, were the impetus behind the violation of DAVID MALITO's rights as described more fully above. Although DAVID MALITO was suffering from an obvious mental health crisis and was not suspected of having committed any crime, Defendant Officers treated his symptoms as non-compliance requiring lethal force rather than a medical emergency requiring a measured and de-escalatory response.

77.     At all times relevant to this Complaint, Defendant, CITY OF JOLIET, had actual knowledge that its training, supervision, and disciplinary practices were deficient and were causing constitutional violations.

78.     Despite knowledge of the unconstitutional customs, practices, and policies identified above, Defendant, CITY OF JOLIET, nevertheless made a deliberate choice not to implement necessary changes or retrain officers on the dangers of unnecessarily and unconstitutionally escalating police encounters, using excessive and unnecessary force, especially against subjects suffering from mental health crises, or intervening to stop the use of excessive force by fellow JPD officers.

79.     The aforesaid deliberate indifference of Defendant, CITY OF JOLIET,

14

was the direct and proximate cause of the pain, suffering, and ultimate death of DAVID MALITO.

## COUNT I
### 42 U.S.C. § 1983 Claim: Excessive Force (Fourth Amendment)
### (Against Officer Christopher Meza)

80. Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

81. The force used against DAVID MALITO by OFFICER MEZA was unreasonable and excessive, without lawful justification, and conducted under color of law.

82. As a result of OFFICER MEZA's unreasonable, unjustified, and excessive use of force, DAVID MALITO Plaintiff's Decedent, DAVID MALITO suffered injuries of a personal and pecuniary nature including, but not limited to, pain, suffering, discomfort, disability, disfigurement, physical impairment, respiratory distress, and cardiac arrest, which ultimately resulted in his death, and he has become liable for large sums of money for medical and hospital care and attention.

83. The aforesaid misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to DAVID MALITO's constitutional rights.

84. This aforesaid misconduct violated the Fourth and Fourteenth Amendments to the United States Constitution, and hence 42 U.S.C. § 1983.

85. The aforesaid constitutional violation(s) described herein was a direct

and proximate result of OFFICER MEZA's actions.

**COUNT II**
**Illinois Wrongful Death Act Claim – Willful and Wanton**
**(Against Officer Christopher Meza)**

86.     Plaintiff re-alleges paragraphs 1 through 79 as if fully restated herein.

87.     Plaintiff, as Independent Administrator of the Estate of DAVID MALITO, Deceased, brings this claim pursuant to the provisions of 740 ILCS 180/1, *et seq.*, commonly known as the Illinois Wrongful Death Act.

88.     At all times relevant to this Complaint, DEFENDANT OFFICER MEZA owed a duty to the general public, and specifically DAVID MALITO, to refrain from willful and wanton conduct that would endanger other persons, and to not act with deliberate indifference or conscious disregard for the health and safety of others, especially Plaintiff's Decedent, DAVID MALITO.

89.     DEFENDANT OFFICER MEZA breached his aforesaid duty by committing one or more of the following willful and wanton acts and/or omissions, including:

  a.     Using unreasonable force to subdue and handcuff DAVID MALITO;

  b.     Forcibly placing DAVID MALITO into the prone restraint position;

  c.     Applying significant and unwarranted pressure on DAVID MALITO's back with his knee;

  d.     Failing to release the pressure placed on DAVID MALITO's back with his knee despite clear and obvious signs that DAVID MALITO was in respiratory distress and/or experiencing extreme pain and suffering as a result of OFFICER MEZA's actions; and

16

      e.      Failing to render medical aid after OFFICER MEZA's actions caused DAVID MALITO to go into respiratory distress and, ultimately, cardiac arrest.

90.    DEFENDANT OFFICER MEZA's aforesaid course of conduct shows an actual and/or deliberate intention to cause harm or, if not intentional, was committed under circumstances exhibiting an utter indifference or reckless and/or conscious disregard for the safety of others, specifically DAVID MALITO.

91.    DEFENDANT OFFICER MEZA ignored known or plainly observable dangerous conditions and acted in a manner that would naturally and probably result in injury to another.

92.    DEFENDANT OFFICER MEZA's conduct was without lawful justification.

93.    As a direct and proximate result of one or more of the aforementioned acts and/or omissions committed by DEFENDANT OFFICER MEZA, DAVID MALITO sustained injuries including, but not limited to, respiratory distress and cardiac arrest, all of which caused or contributed to cause his death.

94.    DAVID MALITO left surviving him various persons who are his next-of-kin including, but not limited to:

      a.      David Palacios
      b.      Kimberly Malito
      c.      Anthony Malito
      d.      Natalie Malito
      e.      Michael Malito

95.    DAVID MALITO's next of kin have and will continue to suffer great injuries of a personal and pecuniary nature as a direct and proximate result of his

death, including grief, sorrow, mental anguish, and the loss of companionship and society. Further, DAVID MALITO's estate was diminished by virtue of the medical and funeral expenses that were incurred.

96. As described above, DEFENDANT OFFICER MEZA's conduct was undertaken within the scope of his employment such that his employer, Defendant CITY OF JOLIET, is liable for his actions.

<u>COUNT III</u>
**Illinois Wrongful Death Act Claim – Battery**
**(Against Officer Christopher Meza)**

97. Plaintiff re-alleges paragraphs 1 through 79 as if fully restated herein.

98. Plaintiff, as Independent Administrator of the Estate of DAVID MALITO, Deceased, brings this cause of action pursuant to the provisions of 740 ILCS 180/1, *et seq.*, commonly known as the Illinois Wrongful Death Act.

99. At the aforesaid time and place, and at all times relevant to this Complaint, Plaintiff's Decedent, DAVID MALITO, did not provoke or induce DEFENDANT OFFICER MEZA, to make offensive physical contact with his person.

100. At the aforesaid time and place, and at all times relevant to this Complaint, Plaintiff's Decedent, DAVID MALITO, did not consent to physical contact to his person by DEFENDANT OFFICER MEZA.

101. As described more fully in the preceding paragraphs, at the aforesaid time and place, DEFENDANT OFFICER MEZA made unwanted, unpermitted, harmful, and offensive physical contact with the person of Plaintiff's Decedent, DAVID MALITO, including, but not limited to forcibly detaining and handcuffing

18

DAVID MALITO face-down on the ground, placing his knee on DAVID MALITO's back, and exerting significant body weight and/or pressure onto DAVID MALITO as he lay restrained in a prone position.

102.    DEFENDANT OFFICER MEZA intended to cause the aforesaid harmful and offensive contact described above.

103.    DEFENDANT OFFICER MEZA's aforesaid harmful and offensive physical contact was done knowingly, intentionally, and with malice.

104.    The aforesaid harmful and offensive physical contact committed by DEFENDANT OFFICER MEZA was without lawful justification.

105.    The aforesaid unpermitted physical contact by DEFENDANT OFFICER MEZA, was deliberate, willful, intentional, malicious and wanton, and without provocation, instigation, or consent.

106.    Plaintiff's Decedent, DAVID MALITO, succumbed to the aforesaid acts by DEFENDANT OFFICER MEZA, but did not consent to such acts being committed against his person.

107.    As a direct and proximate cause of the aforesaid intentional harmful or offensive physical contact of DEFENDANT OFFICER MEZA, and each of them, DAVID MALITO suffered personal injuries including, but not limited to, respiratory distress and cardiac arrest, all of which caused or contributed to cause his death.

108.    DAVID MALITO left surviving him various persons who are his next-of-kin including, but not limited to:

      a.    David Palacios
      b.    Kimberly Malito

c.   Anthony Malito
d.   Natalie Malito
e.   Michael Malito

109.   DAVID MALITO's next of kin have and will continue to suffer great injuries of a personal and pecuniary nature as a direct and proximate result of his death, including grief, sorrow, mental anguish, and the loss of companionship and society.  Further, DAVID MALITO's estate was diminished by virtue of the medical and funeral expenses that were incurred.

110.   As described above, DEFENDANT OFFICER MEZA's conduct was undertaken within the scope of his employment such that his employer, Defendant CITY OF JOLIET, is liable for his actions.

## COUNT IV
### Illinois Survival Act Claim – Willful and Wanton
### (Against Officer Christopher Meza)

111.   Plaintiff re-alleges paragraphs 1 through 79 as if fully restated herein.

112.   Plaintiff, as Independent Administrator of the Estate of DAVID MALITO, Deceased, brings this cause of action pursuant to the provisions of 744 ILCS 5/26-6, commonly known as the Illinois Survival Act.

113.   At all times relevant to this Complaint, DEFENDANT OFFICER MEZA owed a duty to the general public, and specifically DAVID MALITO, to refrain from willful and wanton conduct that would endanger other persons, and to not act with deliberate indifference or conscious disregard for the health and safety of others, especially Plaintiff's Decedent, DAVID MALITO.

114.   DEFENDANT OFFICER MEZA breached his aforesaid duty by

committing one or more of the following willful and wanton acts and/or omissions, including:

      a. Using unreasonable force to subdue and handcuff DAVID MALITO;

      b. Forcibly placing DAVID MALITO into the prone restraint position;

      c. Applying significant and unwarranted pressure on DAVID MALITO's back with his knee;

      d. Failing to release the pressure placed on DAVID MALITO's back with his knee despite clear and obvious signs that DAVID MALITO was in respiratory distress and/or experiencing extreme pain and suffering as a result of OFFICER MEZA's actions; and

      e. Failing to render medical aid after OFFICER MEZA's actions caused DAVID MALITO to go into respiratory distress and, ultimately, cardiac arrest.

115. DEFENDANT OFFICER MEZA's aforesaid course of conduct shows an actual and/or deliberate intention to cause harm or, if not intentional, was committed under circumstances exhibiting an utter indifference or reckless and/or conscious disregard for the safety of others, specifically DAVID MALITO.

116. DEFENDANT OFFICER MEZA ignored known or plainly observable dangerous conditions and acted in a manner that would naturally and probably result in injury to another.

117. DEFENDANT OFFICER MEZA's conduct was without lawful justification.

118. As a direct and proximate result of one or more of the aforesaid wrongful acts of DEFENDANT OFFICER MEZA, Plaintiff's Decedent, DAVID MALITO,

sustained injuries of a personal and pecuniary nature including, but not limited to, pain, suffering, discomfort, disability, disfigurement, physical impairment, respiratory distress, and cardiac arrest, which ultimately resulted in his death; his estate has become liable for large sums of money for medical and hospital care and attention; and the decedent would have been entitled to receive compensation from DEFENDANT OFFICER MEZA for these injuries, had he survived.

119.    As described above, the conduct of DEFENDANT OFFICER MEZA was undertaken within the scope of his employment such that his employer, Defendant, CITY OF JOLIET, is liable for his actions.

## COUNT V
### Illinois Survival Act Claim – Battery
### (Against Officer Christopher Meza)

120.    Plaintiff re-alleges paragraphs 1 through 79 as if fully restated herein.

121.    Plaintiff, as Independent Administrator of the Estate of DAVID MALITO, Deceased, brings this cause of action pursuant to the provisions of 744 ILCS 5/26-6, commonly known as the Illinois Survival Act.

122.    At the aforesaid time and place, and at all times relevant to this Complaint, Plaintiff's Decedent, DAVID MALITO, did not provoke or induce DEFENDANT OFFICER MEZA, to make offensive physical contact with his person.

123.    At the aforesaid time and place, and at all times relevant to this Complaint, Plaintiff's Decedent, DAVID MALITO, did not consent to physical contact to his person by DEFENDANT OFFICER MEZA.

124.    As described more fully in the preceding paragraphs, at the aforesaid

time and place, DEFENDANT OFFICER MEZA made unwanted, unpermitted, harmful, and offensive physical contact with the person of Plaintiff's Decedent, DAVID MALITO, including, but not limited to forcibly detaining and handcuffing DAVID MALITO face-down on the ground, placing his knee on DAVID MALITO's back, and exerting significant body weight and/or pressure onto DAVID MALITO as he lay restrained in a prone position.

125.    DEFENDANT OFFICER MEZA intended to cause the aforesaid harmful and offensive contact described above.

126.    DEFENDANT OFFICER MEZA's aforesaid harmful and offensive physical contact was done knowingly, intentionally, and with malice.

127.    The aforesaid harmful and offensive physical contact committed by DEFENDANT OFFICER MEZA was without lawful justification.

128.    The aforesaid unpermitted physical contact by DEFENDANT OFFICER MEZA, was deliberate, willful, intentional, malicious and wanton, and without provocation, instigation, or consent.

129.    Plaintiff's Decedent, DAVID MALITO, succumbed to the aforesaid acts by DEFENDANT OFFICER MEZA, but did not consent to such acts being committed against his person.

130.    As a direct and proximate result of one or more of the aforesaid wrongful acts of DEFENDANT OFFICER MEZA, Plaintiff's Decedent, DAVID MALITO, sustained injuries of a personal and pecuniary nature including, but not limited to, pain, suffering, discomfort, disability, disfigurement, physical impairment,

respiratory distress, and cardiac arrest, which ultimately resulted in his death; his estate has become liable for large sums of money for medical and hospital care and attention; and the decedent would have been entitled to receive compensation from DEFENDANT OFFICER MEZA for these injuries, had he survived.

131. As described above, the conduct of DEFENDANT OFFICER MEZA was undertaken within the scope of his employment such that his employer, Defendant, CITY OF JOLIET, is liable for his actions.

## COUNT VI
### 42 U.S.C. § 1983 - Failure to Intervene
### (Against Officers Nowak and Espinosa)

132. Plaintiff re-alleges paragraphs 1 through 79 as if fully restated herein.

133. DEFENDANT OFFICER NOWAK and DEFENDANT OFFICER ESPINOSA knew that DEFENDANT OFFICER MEZA was violating DAVID MALITO'S constitutional rights and had a reasonable opportunity to intervene to prevent or mitigate DEFENDANT OFFICER MEZA's unlawful conduct, but both DEFENDANT OFFICER NOWAK and DEFENDANT OFFICER ESPINOSA failed and/or refused to do so.

134. As a direct and proximate result of DEFENDANT OFFICER NOWAK and DEFENDANT OFFICER ESPINOSA's failure to intervene, Plaintiff's Decedent, DAVID MALITO, sustained injuries of a personal and pecuniary nature including, but not limited to, pain, suffering, discomfort, disability, disfigurement, physical impairment, respiratory distress, and cardiac arrest, which ultimately resulted in his death, and he has become liable for large sums of money for medical and hospital care and attention.

24

135.   As described above, the conduct of DEFENDANT OFFICER NOWAK and DEFENDANT OFFICER ESPINOSA was undertaken within the scope of their employment such that their employer, Defendant, CITY OF JOLIET, is liable for their actions.

<u>COUNT VII</u>
**42 U.S.C. § 1983 -** *Monell* **Policy and Practice Claim**
**(Plaintiff against Defendant City of Joliet)**

136.   Plaintiff re-alleges each of the preceding paragraphs as though fully restated herein.

137.   As a matter of both policy and practice, the JOLIET POLICE DEPARTMENT directly encourages, and is thereby the driving force behind, the very type of misconduct alleged above by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

138.   As a matter of policy and practice, the JOLIET POLICE DEPARTMENT facilitates the very type of misconduct alleged above by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Joliet Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging past and future abuses, such as those affecting Plaintiff's Decedent, DAVID MALITO, as alleged above.

139.   As detailed above, the actions of DEFENDANT OFFICERS were undertaken pursuant to the following policies, practices, and customs of Defendant, CITY OF JOLIET and/or JOLIET POLICE DEPARTMENT:

     a.   A widespread practice of using unreasonable force and failing to de-escalate encounters;

b.    A widespread practice of using excessive force against individuals experiencing mental health crises;

c.    A failure to train officers on the dangers of positional asphyxia and/or cardiac arrest and prone restraint;

d.    A failure to supervise and discipline officers, creating a culture of impunity; and

e.    A widespread custom of officers failing to intervene when witnessing excessive force.

140.   Defendant, CITY OF JOLIET, acted with deliberate indifference to the rights of Plaintiff's Decedent, DAVID MALITO, having notice of these deficient policies, practices, and customs prior to the death of DAVID MALITO and failing to act to protect the public.

141.   Defendant, CITY OF JOLIET, has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

142.   The aforesaid policies, practices, and customs of Defendant, CITY OF JOLIET, were the impetus behind the constitutional violations that caused DAVID MALITO's pain, suffering, disability, disfigurement, respiratory distress, cardiac arrest, and death.

### *Respondeat Superior*
### (Defendant City of Joliet)

143.   Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

144.   As described above, the conduct of DEFENDANT OFFICER MEZA, DEFENDANT OFFICER NOWAK, and DEFENDANT OFFICER ESPINOSA were

undertaken within the scope of their employment such that their employer, Defendant, CITY OF JOLIET, is liable for their actions.

## Indemnification
### (Defendant City of Joliet)

145.    Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

146.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

147.    At all times relevant to this Complaint, DEFENDANT OFFICER MEZA, DEFENDANT OFFICER NOWAK, and DEFENDANT OFFICER ESPINOSA were employees of Defendant, CITY OF JOLIET, and were acting within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, DAVID PALACIOS, as Independent Administrator of the Estate of DAVID MALITO, Deceased, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, JOLIET POLICE OFFICER CHRISTOPHER MEZA, in his individual capacity; JOLIET POLICE OFFICER OLIWIA NOWAK, in her individual capacity; JOLIET POLICE OFFICER ANDREA ESPINOSA, in her individual capacity; and CITY OF JOLIET, awarding compensatory damages and attorneys' fees, along with punitive damages against DEFENDANT OFFICERS in their individual capacity, as well as any other relief that this Court should deem just and appropriate.

**Jury Demand**

Plaintiff, DAVID PALACIOS, as Independent Administrator of the Estate of DAVID MALITO, Deceased, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

*/s/ Ian M. Barney*

**_Counsel for Plaintiff_**
Ian M. Barney
Jason E. Hammond
BARNEY HAMMOND LLP
53 W. Jackson Blvd., Ste 1424
Chicago, Illinois 60604
Tel: (312) 261-5683
E: ian@barneyhammond.com
E: jason@barneyhammond.com