**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DAVID PALACIOS, as Independent Administrator of the Estate of DAVID MALITO, Deceased, | ) ) ) ) ) | |
| *Plaintiff*, | ) | No. 25 C 15626 |
| v. | ) ) | Chief Judge Virginia M. Kendall |
| CITY OF JOLIET, a Municipal Corporation; JOLIET POLICE OFFICER CHRISTOPHER MEZA (Star No. 138), in his individual capacity; JOLIET POLICE OFFICER OLIWIA NOWAK (Star No. 216), in her individual capacity; and JOLIET POLICE OFFICER ANDREA ESPINOSA (Star No. 254), in her individual capacity, | ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

David Malito died on Christmas morning. He was working the nightshift at a Shell gas station in Joliet. Around 4:30 a.m., he called the police. He was terrified that someone was in the gas station trying to kill him. When Officers Meza, Nowak, and Espinosa arrived, they found no would-be murderer, but Malito suffering from psychosis and a severe mental health crisis. They did not assuage Malito. They instead let him run outside, forced him down to the ground, and handcuffed him while he lay prostrate on the freezing gas station pavement. Still outside, waiting for an ambulance to arrive, Malito was handcuffed, subdued; but the Officers did not sit him up or console him. Instead, for several minutes, Officer Meza kneeled into Malito's back—stopping his breathing—while Officer Nowak pinned Malito's legs to the ground. Moments later, Malito went into acute respiratory distress, cardiac arrest, and, after being transported to Saint Joseph Medical

1

Center, died at 5:14 a.m. David Palacios, Independent Administrator of Malito's estate, sued the City of Joliet and the three officers in a seven-count complaint. (Dkt. 1). Defendants moved to dismiss Count VII, the Estate's claim under 42 U.S.C. § 1983 and *Monell* against Defendant City of Joliet. (Dkt. 26). For the reasons below, the Court denies Defendants' motion to dismiss. (*Id.*)

## BACKGROUND

The Estate's core *Monell* allegations are that the City of Joliet, through the Joliet Police Department ("Department"), engages in a "widespread practice of using unreasonable force," fails "to de-escalate encounters," and uses "excessive force against individuals experiencing mental health crises." (Dkt. 1, ¶¶ 139.a-b). The Estate alleges that the Department systemically fails to "train officers on the dangers of positional asphyxia," "cardiac arrest," and "prone restraint" while also failing "to supervise and discipline officers"—"creating a culture of impunity." (*Id.*, ¶¶ 139.c-d). It asserts a "widespread custom of officers failing to intervene when witnessing excessive force." (*Id.*, ¶ 139.e). Built from these failures, the Estate alleges that Officer Meza's and Officer Nowak's "unconstitutional actions" caused Malito's death and "were the direct result of the City of Joliet's pervasive, systemic, and unconstitutional customs, policies, and practices." (*Id.*, ¶ 60).

The Estate alleges that the Department's "culture of impunity and ratification" "emboldened" Officer Meza "to use excessive force[.]" (*Id.*, ¶ 74). It continues that, "[d]espite knowledge of the unconstitutional customs, practices, and policies," the Department "made a deliberate choice not to implement necessary changes[.]" (*Id.*, ¶ 78); (*id.*, ¶¶ 70, 74, 78); (*see also* Dkt. 29-1 at 19-49). The Estate alleges Officers Meza and Nowak "failed to make reasonable efforts to de-escalate their encounter with David Malito, who was visibly suffering from a mental health crisis" and that these failures were "[c]onsistent with" the Department's "widespread custom, practice, and policy[.]" (*Id.*, ¶ 64) (capitalization removed). When the Officers "grabbed"

2

Malito and "resorted to high-level physical force," these actions were "pursuant to" the Department's "custom of 'escalating early,'" even with, and particularly inappropriate towards, "people with behavioral health disabilities." (*Id.*, ¶¶ 68-69); (*see also id.*, ¶¶ 60-62, 64-65, 69, 76, 78); (*see also* Dkt. 29-1 at 50, 52-53). The Estate connects the Department's culture of excessive force and inappropriate responses towards individuals with mental health disabilities to the Department's "broken" "accountability systems." (*Id.*, ¶ 72). It posits that the Department's inadequate "accountability systems have directly contributed to patterns of unconstitutional and unlawful policing" creating a "culture of impunity" that dissuades officers from "intervening" in the face of unconstitutional conduct. (*Id.*, ¶¶ 73-74, 78); (*id.*, ¶¶ 71-78); (*see also* Dkt. 29-1 at 92, 94).

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded allegations of fact as true and draw all reasonable inferences in the plaintiff's favor." *Miao v. United Airlines, Inc.*, 164 F. 4th 622, 623 (7th Cir. 2026). The Court will "not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

3

**ANALYSIS**

Defendants argue that the Estate's "*Monell* claim is a standard 'widespread custom and practice' claim"; but that it must fail because it "does not reference any factual scenario other than the one involving Malito on December 25, 2024" despite the Seventh Circuit "plainly" holding that "even three incidents are not necessarily sufficient to state a *Monell* claim." (Dkt. 27 at 5). Defendants say the Estate's *Monell* claim merely "tacks on legal conclusions and rote incantations" to Malito's "own experience." (*Id.* at 5-6). They further assert that the Estate's reliance on a report by the Illinois Attorney General ("Report") does not save the day because it is "similar to reports into the Chicago PD by the *federal* Attorney General" and other courts have "rejected" prior attempts by different plaintiffs "to leverage those federal DOJ reports into a *Monell* claim." (*Id.* at 6). Defendants go so far as to say that while the "name of the municipality has changed from Chicago to Joliet, and the name of the report's author has changed from the federal DOJ to the Illinois AG . . . the scenario and the legal principles remain the same." (*Id.* at 6-7). The Estate "taking a single incident, and then tacking on a long list of legal conclusions and quotations from a critical (and political) investigation" is insufficient, Defendants maintain. (*Id.* at 7).

The Estate counters by noting that it is "well-settled precedent that a plaintiff is not required to identify every other *or even one other individual* who has suffered the same harm to state a valid *Monell* claim." (Dkt. 29 at 7) (quotes omitted). The Estate continues that it need not plead "other similar incidents" because it need only "allege facts *that permit the reasonable inference* that the practice is so widespread so as to constitute a governmental custom." (*Id.* at 8-9) (quotes omitted). The Estate asserts that Defendants' critique of the Report is misplaced and "fundamentally mischaracterize[s]" the Estate's allegations. (*Id.* at 10). It posits that "[w]hen a plaintiff pairs his own constitutional injury with specific findings of a systemic investigative report by a

4

governmental body, courts in this District routinely hold that the plaintiff has adequately pleaded a Monell claim." (*Id.*) It attacks Defendants' case law, pointing out that it is "distinguishable" because the plaintiffs there "failed to connect the facts of their cases to the findings in [their] report[s]." (*Id.* at 10-11). Yet it did not fall into that trap but "connected" Defendants' "conduct to the specific systemic failures identified in the" Report. (*Id.* at 12) (citing Dkt. 1, ¶¶ 61-76). While the Defendants did not raise an argument that the Estate's allegations fail on causation (*see, e.g.*, Dkt. 27 at 4), the Estate nevertheless asserts that it adequately pleaded "a plausible causal link between the municipal custom, policy, or practice and the constitutional violation complained of." (Dkt. 29 at 13).

On reply, Defendants continue pressing their main arguments, asserting that, for example, the Estate provided "high-level conclusory statements" lacking support. (Dkt. 32 at 2); (Dkt. 27 at 7-9). Defendants maintain that the Report is insufficient because it fails to apply to the situation here; and, at any rate, the Estate failed to explain how "any shortcomings with JPD that may have existed at the time of the cases studied by the OAG from 2017-2022 were ongoing in December of 2024." (*Id.* at 3). For the first time on reply, Defendants assert that the Estate failed to satisfy the causation standard under *Monell*. (*Id.* at 4).

"For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced 'to some municipal action (i.e., "a policy or custom"), such that the challenged conduct is properly attributable to the municipality itself'; (3) 'the policy or custom demonstrates municipal fault, i.e., deliberate indifference'; and (4) 'the municipal action was the moving force behind the federal-rights violation.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023)

(quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021)); *Roundtree v. Dart*, 2025 WL 401207, at *3 (7th Cir. Feb. 5, 2025).

Defendants challenge only the second element: the Estate's allegations concerning municipal action. (Dkt. 27). "To succeed on that theory, [the Estate] must allege facts permitting a reasonable inference 'that the practice is widespread and that the specific violations complained of were not isolated incidents.'" *Thomas*, 74 F.4th at 524 (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)). "Allegations of 'a few sporadic examples of an improper behavior' will not suffice." *Id.* (quoting *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021)).

The bulk of Defendants' assault is directed at the Estate's reliance on the Report. (Dkt. 27). While the Estate did not attach the report to its Complaint, and the Defendants did not attach it to their motion to dismiss, the Estate expressly incorporated the Report into its Complaint, quoted from it, and made it central to its *Monell* claim. (Dkt. 1). The Court must therefore ascertain whether it can consider the Report on this motion to dismiss. *See* Fed. R. Civ. P. 12(d).

The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider . . . documents referenced in the pleading if they are central to the claim.") (cleaned up). That the Estate failed to attach the Report does not bar the Court from considering it nor does it convert the motion into one for summary judgment. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the

6

complaint and referred to in it, and information that is subject to proper judicial notice"); *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (the Court can consider documents referred but not attached to the complaint that are central to a claim).

The Court may consider the Report, but there is a difference in how the Court views the Estate's allegations that summarize, quote from, or are based on the Report. The "court is not bound to accept [the Estate's] allegations as to the effect of the [Report], but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quotes omitted). Thus, the Court's deference stops when the Estate's allegations stray from independent well-pleaded allegations into discussions of, or quotes from, the Report itself. (*See, e.g.*, Dkt. 1, ¶¶ 62, 63). When presented with the latter, the Court does not accept the Estate's interpretation of the Report, nor the quotes from it, as true, because it may not "automatically credit[] the statements as if they were alleged by" the Estate itself. *Taylor v. Idleburg*, 2026 WL 687947, at *2 (7th Cir. Mar. 11, 2026). Furthermore, because the Estate has not denied the Report's "accuracy, the assertions contained in [the Report] control over [the Estate's] allegations to the contrary." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 498-99 (7th Cir. 2025) (*Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020)). The Court may also take judicial notice of the existence of the Report, but it may not accept as true any contents that are subject to reasonable dispute. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)); *see also Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) (noting that it is proper for the Court to take judicial notice of public records); *Reinauer v. United Airlines, Inc.*, 2026 WL 1430494, at *5 (N.D. Ill. May 21, 2026) (explaining the contours of what judicially noticed content the Court may accept as true on a motion to dismiss).

The Report is by the Office of the Illinois Attorney General and was released on December 12, 2024—thirteen days before Malito died. (Dkt. 29-1); (Dkt. 1). The Report details the Illinois Attorney General Office's three-year investigation of the Joliet Police Department. (*Id.*) The Illinois Attorney General found that the Department "engages in a pattern or practice of unreasonable force[.]" (Dkt. 29-1 at 19); (*see also id.* at 19-49); (*see also* Dkt. 1, ¶¶ 70, 74, 78). The Report examines the Department's "pattern of excessive force" including its use of "punching, kicking, or kneeing people on other parts of their bodies." (*Id.* at 32); (*see also* Dkt. 1, ¶¶ 70, 74, 78). The Report discusses the Department's "crisis intervention policies and practices" and states that they "are not adequate" and "contribute[] to the use of excessive force against people with behavioral health disabilities." (Dkt. 29-1 at 50); (*see also* Dkt. 1, ¶¶ 60-62, 64-65, 69, 76, 78). It further states that the Department's "approach, in which officers resort quickly to aggression and demand immediate compliance under threat of force," is "especially inappropriate, harmful, and likely to lead to excessive force when directed at a person who has a behavioral health disability." (*Id.* at 52-53); (*see also* Dkt. 1, ¶¶ 60-62, 64-65, 69, 76, 78). The excessive force and inappropriate responses towards individuals with mental health disabilities are caused and exacerbated by the Department's inadequate "accountability systems" which "fail to adequately detect, investigate, respond to, and document misconduct," it states. (*Id.* at 92); (*see also* Dkt. 1, ¶¶ 71-78). The Report discusses the Department's "culture" that "tolerates or ignores serious wrongdoing"; it found that this culture was the product of "serious deficiencies" which undermine the department's "reliability" and "legitimacy." (*Id.* at 92, 94); (*see also* Dkt. 1, ¶¶ 71-78).

The Defendants do not assert that the Court should not consider the Report. They also do not challenge the Report's veracity. Apart from insinuating that the Report is "political" (Dkt. 27

8

at 7), Defendants offer no basis why the Estate's reliance on the Report is impermissible. They instead assert that the Estate's reliance on it is not *enough* to save its *Monell* claim. (*Id.* at 6-7).[1]

The Report is extensive. It spans nearly 160 pages single-spaced; includes years' worth of studies, data, tests, and interviews; and poses 86 discrete "recommendations" for the Department to improve on. (*See generally* Dkt. 29-1). The Estate's allegations are not inconsistent with the Report; rather, they reference or quote from it, tying the Report's findings to the alleged conduct. (*Compare* Dkt. 1 *with* Dkt. 29-1). The conduct and policies the Estate alleges caused Malito's death are ones the Report found troubling. (*Id.*) In sum, the Court does not accept the Report's contents as true; but it does not doubt the existence of its research. The Estate's reliance on it is proper and relevant to the strength of its *Monell* claim. *See Dixon v. Cnty. of Cook*, 819 F.3d 343, 349 (7th Cir. 2016).

The Court now turns to Defendants' arguments concerning the Estate's reliance on the Report. Defendants assert that the Report is "substantially similar to reports into the Chicago PD by the *federal* Attorney General" and, because other courts have rejected other plaintiffs' attempts to rely on those federal reports, the Estate's reliance on the state Report here is insufficient to save its *Monell* claim. (Dkt. 27 at 6). Apart from the fact that Defendants in no way support this claim— nor explain a single "similarity" between the Report and the other unidentified federal reports—

---

[1] This is an important distinction. Defendants never assert that the Estate—or the Court—may not rely on the Report. (Dkt. 27). They therefore waived that position. *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 515 (7th Cir. 2024); *White v. United States*, 8 F.4th 547, 552-53 (7th Cir. 2021); *see also Allen v. Casper*, 2026 WL 674309, at *5 (N.D. Ill. Mar. 10, 2026) (explaining that "a litigant may waive an issue or argument in many ways") (quotes omitted) (cleaned up); *Bakov v. Consol. World Travel, Inc.*, 2026 WL 810913, at *14 (N.D. Ill. Mar. 24, 2026) (failing to raise an argument results in waiver). While they argue that the Estate's use "is contrary to the law" in their conclusion on reply, raising an unsupported statement for the first time on a reply results in waiver. *Id.*; (Dkt. 32 at 4-5). On the topic of waiver, Defendants also waived their argument that the Estate failed the causation standard under *Monell* because the Defendants raised it for the first time on reply. (Dkt. 32 at 4); *Knowlton*, 119 F.4th at 515; *White*, 8 F.4th at 552-53. To the extent Defendants contend that their passing reference to the causation standard suffices to preserve (*see* Dkt. 27 at 4), that too fails. "[U]ndeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]" *Jackson v. City of Madison*, 176 F.4th 1005, 1016 (7th Cir. 2026); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

this position asks the Court to accept an absurdly broad principle from an even broader analogy based on no binding precedent. Each of the unpublished district court cases The cases Defendant cite are facially distinguishable. The plaintiffs in *Milan v. Schulz* and *Jackson v. City of Chicago* attached reports to their complaint that were irrelevant to their allegations and disconnected from the facts of their cases. 2022 WL 1804157, at *5 (N.D. Ill. June 2, 2022); 2021 WL 3883111, at *6 (N.D. Ill. Aug. 31, 2021). The plaintiffs in *Taylor v. City of Chicago* and *Carmona v. City of Chicago* raised reports for the first time in their responses to motions to dismiss; because they failed to include them in their complaints, the courts did not consider them. 2021 WL 4523203, at *2 (N.D. Ill. Oct. 4, 2021); 2018 WL 1468995, at *4 (N.D. Ill. Mar. 26, 2018). The *Monell* claim in *Thomas v. City of Markham, Illinois*, warranted dismissal because the allegations were boilerplate, generalized, and irrelevant. 2017 WL 4340182, at *3 (N.D. Ill. Sept. 29, 2017). Unlike those cases, the Report's findings squarely bolster the Estate's allegations; and the Estate ties the Defendants' alleged conduct to the Report's findings. *Supra* at 2-3, 8-9. Merely because other plaintiffs in other cases impermissibly relied on different reports under different circumstances does not somehow render the Estate's reliance on the Report here impermissible.

The Court also rejects Defendants' arguments that the Report's findings are irrelevant because they occurred prior to the alleged event. (*See* Dkt. 32 at 2-4). The Report chronicles a three-year investigation and was released thirteen days before Malito died. (Dkt. 29-1; Dkt. 1). There is no doubt the Department knew about the investigation, Report, and its findings. Yet, the Estate alleges that the Department took no remedial action. (Dkt. 1). The relevance of the prior events is plain. The Report analyzed the polices, procedures, and customs that informed and guided the Officers' conduct leading up to the day Malito died. (*Id.*) The Estate alleges that it was that municipal conduct that caused Malito's death. (*Id.*) None of the Estate's allegations are inconsistent

10

with these events. (Dkt. 1). The Court must therefore accept as true and draw the reasonable inference that the Department's practices were the driving force behind Malito's death. *Thomas*, 74 F.4th at 524; *Gill*, 850 F.3d at 344.

Defendants also claim that the Estate's reliance on a singular incident from the night Malito died is insufficient as a matter of law to prove a widespread custom and practice. (Dkt. 27 at 5) (relying on *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)). This commonly raised and equally misunderstood argument fails for several reasons. To begin, *Thomas v. Cook* is not the guiding standard on the Court's review of a *Monell* claim on a motion to dismiss; the Court there was reviewing the district court's denial of judgment as a matter of law. *Id.* at 300-301. Here, the Court is bound by the likes of *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) and *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). These govern the standard for what a plaintiff must plead to plausibly allege a *Monell* claim to overcome a motion to dismiss—not what is necessary to *prove* that claim or to survive a motion for judgment as a matter of law *after trial*. *Compare id. with Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Thus, Defendants' argument based on *Thomas v. Cook* that "even three incidents are not necessarily sufficient to state a *Monell* claim" is unavailing. (Dkt. 27 at 5). Even at face value this point ignores that the Estate incorporated the Report into its Complaint and, based on the researched findings of hundreds of incidents, alleges that a widespread practice exists. *Supra* at 2-3, 8-9. The Report's findings bolster these allegations. (*See, e.g.*, 29-1 at 19) (the "office identified numerous unreasonable uses of force between 2017 and 2022"); (*see also id.* at 21) ("We reviewed a random sample of JPD's more than 1,000 nondeadly reported uses of force from 2017 through 2022 stratified by use of force type"). The Court takes no position on the accuracy of the

11

findings, but at this stage, this is sufficient to survive Rule 12(b)(6). *Thomas*, 74 F.4th at 524; *Gill*, 850 F.3d at 344.

Even still, Defendants argue that the Estate's *Monell* claim merely "tacks on legal conclusions and rote incantations" to Malito's "own experience." (Dkt. 27 at 5-6). Defendants contend that this type of "conclusory" pleading routinely gets dismissed. (*Id.*) Indeed, relying on *Slabon v. Sanchez*, 2020 WL 5763760, at *5 (N.D. Ill. Sept. 28, 2020) and a whole host of other unpublished cases wedged into a footnote, Defendants curtly conclude that "[t]his is not a close question." (*Id.* at 6-8); (*see also id.* at 5-6); (Dkt. 32 at 1-4). This is not a scenario where a plaintiff merely alleges a single, isolated incident and then intones the elements of a *Monell* claim. None of the cases Defendants cite alter that fact. To start, *Slabon* is distinguishable as the pro se plaintiff there—on his Sixth Amended Complaint—failed to plausibly allege any of the three bases for a *Monell* claim but instead "merely describe[d] the factual circumstances of his arrest and tack[ed] on boilerplate allegations that trace the legal requirements of a *Monell* claim." *Slabon*, 2020 WL 5763760, at *12 (quotes omitted). Here, the Estate plausibly alleged that the Department's policies caused Malito's death. (Dkt. 1); *supra* at 2-3, 8-9. It alleges that Malito's death was not a one-off random event but the byproduct of years of unconstitutional policies put into action. (*Id.*) Its allegations are bolstered by a recent and strikingly relevant government Report raising alarm over the very conduct that the Estate alleges caused Malito's death. (*Id.*) Consider just a few of the allegations on this point, such as that the Department failed to (1) "make reasonable efforts to de-escalate," (2) "utilize crisis intervention techniques," (3) "take immediate corrective action or alter its supervision of officers," (4) "hold Department members accountable for misconduct," (5) "justify such misconduct," (6) "intervene" to stop excessive and deadly force, or (7) "implement necessary changes or retrain officers." (Dkt. 1, ¶¶ 64, 66, 67, 72, 74, 75, 78).

12

Nevertheless, Defendants repeatedly assert that the Estate's allegations are so boilerplate to merit no weight from the Court. (Dkt. 27 at 7-8); (*see also* Dkt. 32 at 1-4). Based on this, Defendants assert that "[t]here are no concrete facts on what Joliet PD actually does, only conclusory statements about shortcomings," and so the Court should dismiss the Complaint just like the court did in *Taylor*. (*Id.* at 7) (relying on *Taylor v. City of Chicago*, 2021 WL 4523203, at *2 (N.D. Ill. Oct. 4, 2021)). In fact, *Taylor* is actually a good example of why dismissal here is improper. The complaint there was skeletal—it had no allegations in support of its *Monell* claim. (*Id.*) By contrast, the Estate's Complaint is sufficiently detailed. (Dkt. 1); *supra* at 2-3, 8-9. It limns Malito's last moments before his death, incorporates, cites to, and quotes from the Report, and ties the alleged conduct that caused Malito's death to the findings of the Report. *Id.* The Court has little difficulty tracing the alleged constitutional deprivation "to the municipality itself" or accepting the "reasonable inference 'that the practice is widespread and that the specific violations complained of were not isolated incidents.'" *Thomas*, 74 F.4th at 524 (quoting *Gill*, 850 F.3d at 344).

## CONCLUSION

The Court denies Defendants' motion to dismiss. (Dkt. 26).

Virginia M. Kendall
United States District Judge

Date: June 29, 2026

13